Filed 5/26/22  In re S.R.B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re S.R.B., a Minor. | 2d Juv. No. B316851 (Super. Ct. No. T000158) (Ventura County) |
| M.S. et al.,<br><br>    Petitioners and Respondents,<br><br>v.<br><br>S.B.,<br><br>    Objector and Appellant. | |

Probate Code section 1516.5[1] sets out the procedures guardians of a child must follow to have the child released from the custody and control of the child's parents. [2]

---

[1] All statutory references are to the Probate Code unless otherwise stated.

[2] "Section 1516.5 reads,

S.B. (Father) appeals an order of the superior court granting a petition by M.S. and D.S. (Petitioners) to declare his minor child S.R.B. freed from his custody and control under Probate Code section 1516.5. Father contends the court erred by

"**(a)** A proceeding to have a child declared free from the custody and control of one or both parents may be brought in accordance with the procedures specified in Part 4 (commencing with Section 7800) of Division 12 of the Family Code within an existing guardianship proceeding, in an adoption action, or in a separate action filed for that purpose, if all of the following requirements are satisfied:

"**(1)** One or both parents do not have the legal custody of the child.

"**(2)** The child has been in the physical custody of the guardian for a period of not less than two years.

"**(3)** The court finds that the child would benefit from being adopted by his or her guardian. In making this determination, the court shall consider all factors relating to the best interest of the child, including, but not limited to, the nature and extent of the relationship between all of the following:

"**(A)** The child and the birth parent.

"**(B)** The child and the guardian, including family members of the guardian.

"**(C)** The child and any siblings or half siblings.

"**(b)** The court shall appoint a court investigator or other qualified professional to investigate all factors enumerated in subdivision (a). The findings of the investigator or professional regarding those issues shall be included in the written report required pursuant to Section 7851 of the Family Code.

"**(c)** The rights of the parent, including the rights to notice and counsel provided in Part 4 (commencing with Section 7800) of Division 12 of the Family Code, shall apply to actions brought pursuant to this section.

"**(d)** This section does not apply to any child who is a dependent of the juvenile court or to any Indian child."

2

finding S.R.B. was not an Indian child and that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply. The court found ICWA did not apply. We affirm.

FACTS

Petitioners are the maternal grandparents of S.R.B. In May 2017, they were appointed guardians of Father's minor child S.R.B. in Ventura County Superior Court (case No. 56-2017-00492820-PR-GP-OXN).

On February 14, 2017, M.S., the maternal grandfather, filed an ICWA-020 form and stated, "I may have Indian ancestry" from the Cherokee Nation of Oklahoma. An ICWA-030 form "Notice of Child Custody Proceeding for Indian Child" was mailed to the Cherokee Indian tribes. Petitioners declared under oath that they had "given all information [they] have about the relatives" on the form.

On February 21, 2017, the Eastern Band of Cherokee Indians determined that S.R.B. was "neither registered nor eligible to register as a member of this tribe." It said the tribe was "not empowered to intervene in this matter." On March 9, 2017, the Cherokee Nation determined the child was not an Indian child and her name could not be "found as [a] current-enrolled" member of the tribe. The tribe informed Petitioners' counsel that it "does not have legal standing to intervene." The United Keetoowah Band of Cherokee Indians in Oklahoma also determined that S.R.B. "does not meet the definition of an Indian Child" under ICWA, and said it "will not intervene in this matter."

On March 10, 2021, Petitioners then filed their petition to declare S.R.B. "freed from parental custody and control" of Father and mother (Mother) under section 1516.5. They alleged, among

3

other things, that Father had not had "the legal or physical custody of [S.R.B.] within the last two (2) years" and it would be in the child's "best interest to be adopted by Petitioners"; that S.R.B. had bonded with Petitioners; and that Mother "is willing to execute her consent to the adoption of the minor by Petitioners."

A report from the Ventura County Human Services Agency (HSA) noted that Mother told a social worker, "[Father] is a very violent man. I had to move away to be safe. I know my parents take good care of [the child] and she is safe with them. . . . I have permanent scars and injuries from him. He had terrorized me for years." Mother said, "I will consent to the adoption; it is what is best for [the child]."

Petitioners requested the trial court to take judicial notice of documents from the state of Nevada showing that Father had pled guilty to burglary in 2017. The parties stipulated that Father "has not had legal or physical custody of the minor for at least the last five (5) years"; his last "face-to-face contact" with the child was "on or about October 16, 2016"; and he has "not financially supported" the child since October 2016.

*ICWA*

Petitioners alleged in their petition that S.R.B. is not an Indian child under ICWA. The child's maternal grandmother, a petitioner, filed an ICWA-020 form. She declared that none of the categories of Indian status, tribal membership, or eligibility applied to her or the child.

Father appeared in these proceedings. On June 4, 2021, the trial court said it looked at the guardianship file on the ICWA issue, but, among other things, it did not see a response from the three Cherokee tribes. It appears the court may not have

reviewed the complete file because the responses of those tribes showing that ICWA does not apply are part of the record. Petitioners' "Report re Inapplicability of ICWA" was filed on March 16, 2017, as shown by the court's docket. The court ordered Father to file an ICWA-020 form.

Two months later, Father filed his ICWA-020 form. He declared that none of the categories of Indian status or tribal eligibility or enrollment applied to him or the child.

At a hearing on October 25, 2021, the trial court stated it had received Father's ICWA-020 form. The court found, "[B]ased upon the information the parties have provided, . . . ICWA does not apply." In its January 3, 2022, order, the court found, "[T]here is no evidence or reason to believe that either of the minor's natural parents has any American Indian ancestry, and, therefore, the minor is not an 'Indian Child' as defined in 25 USC 1903[,] subd. 4, and is not subject to the provisions of the Indian Child Welfare Act, 25 USC 1901, *et seq.*"

The trial court declared S.R.B. "freed from the parental custody and control" of Father.

DISCUSSION

*ICWA*

Under ICWA, in a proceeding involving termination of a parent's parental rights, a trial court must determine if the child involved in the proceedings "is or may be an Indian child." (Welf. & Inst. Code, § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a); see also *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1387.) "The court, county welfare department, and the probation department have an affirmative and continuing duty" to make an adequate ICWA inquiry. (Welf. & Inst. Code, § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).) If there is "reason to know"

5

that "an Indian child is involved," notice must be sent to "the child's tribe."  (Welf. & Inst. Code, § 224.3, subd. (a).)  The "Indian tribe has the sole authority to determine its own membership."  (*In re K.P.* (2015) 242 Cal.App.4th 1063, 1066.)  The "court must defer to the membership decisions of an Indian tribe" as those decisions are conclusive.  (*Ibid.*)

Under current law, mere statements of belief that a child may be an Indian child "is not among the statutory criteria for determining whether there is *a reason to know* a child is an Indian child."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 887, italics added.)  The *Austin J.* court held such statements, by themselves, would not be sufficient to trigger further ICWA inquiry.

The trial court's finding that ICWA does not apply is consistent with the determinations of three Cherokee tribes that said S.R.B. was not a member or entitled to tribal membership.

Father claims the trial court erred because the HSA report in the 2021 proceedings "did not address ICWA" and HSA did not "interview [him]" about Indian heritage.  But in his ICWA-020 form, Father confirmed that neither he nor the child fell within *any* of the categories for membership in any Indian tribe.

The absence of a statement on ICWA in that report does not mean that the trial court did not have evidence to make its ICWA findings.  Father highlights the alleged ICWA omissions in the HSA 2021 report.  But the record also includes the 2017 proceedings where the ICWA compliance documents were filed with the court, along with the responses by the three tribes.  There is no showing that the family's biological or ancestral history changed between 2017 and 2021.

6

Father claims an "investigator for the guardianship report filed May 4, 2017, stated it made two attempts to contact Father, incarcerated at Clark County Detention [C]enter in Las Vegas, Nevada, but was unable to arrange a telephonic interview." But Father has not shown how that alleged omission in not asking him about Indian ancestry in 2017 would change the result. "[T]here can be no prejudice unless, *if* he had been asked, father *would have* indicated that the child did (or may) have such ancestry." (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.) But in 2021, Father confirmed that neither he nor S.R.B. had Indian heritage. There is no showing of reversible error. (*Ibid.*)

Father contends Petitioners did not make an attempt to interview paternal family members. He suggests this meant the tribes did not have sufficient information to make an adequate determination on Indian heritage. But Father concedes that the ICWA forms sent to the tribes contained information on the paternal relatives. He notes that the notices included the names of the "paternal grandmother," the "paternal grandfather," and the "paternal great-grandmother." He claims the ICWA forms sent to the tribes indicated that some of the information about these paternal relatives was "unknown." But Petitioners stated under oath on the ICWA notice forms that they provided *all* the information they knew about these relatives.

Father has not shown that Petitioners withheld information, or were negligent, or that their declarations were not truthful. Nor has he provided the missing information about his relatives, or shown this information is available or could be ascertained, or shown that it could lead to information showing some tribal connection. "The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and

7

disclosure is a matter entirely within the parent's present control." (*In re Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431.) The parent cannot simply assert speculative claims on appeal "without *any showing* whatsoever that *the interests protected by the ICWA are implicated* in any way." (*Ibid.*, italics added.)

Given the determinations by the three Cherokee tribes and Father's ICWA-020 form, there is no information sufficient to give anyone a "reason to believe" that S.R.B. is an Indian child. (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 888; *In re A.M.* (2020) 47 Cal.App.5th 303, 323.) Those tribal determinations that the child does not have any Indian heritage are conclusive, and they undermine Father's claims on appeal. (*In re K.P.*, *supra*, 242 Cal.App.4th at p. 1066.)

"ICWA does not obligate the court or DPSS 'to cast about' for investigative leads." (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 323.) "There is no need for further inquiry if no one has offered information that would give the court or [HSA] reason to believe that a child might be an Indian child." (*Ibid.*)

Father cites *In re Noreen G.* and claims it supports a remand for a further ICWA inquiry. There the parent on appeal made a specific offer of proof that a relative was listed on the " 'Dawes Rolls' as a Seminole Indian." (*In re Noreen G.*, *supra*, 181 Cal.App.4th at p. 1388.) The court indicated that had she not made such an "offer of proof," or an "affirmative assertion of Indian heritage on appeal," there would not have been a ground to support an ICWA remand. (*Ibid.*) By contrast, Father made no showing on appeal that any relative has any connection to any tribe. There is no showing to require additional ICWA notices to the tribes. (*Ibid.*; *In re Austin J.*, *supra*, 47 Cal.App.5th at pp. 887-888.)

8

"The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis.  In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal."  (*In re Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431.)

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.

9

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Janette Freeman Cochran for Objector and Appellant.

Donnelly & Evans and Douglas R. Donnelly for Petitioners and Respondents.